IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIESHA HOLLAND,

    Plaintiff,

vs.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,[1]

    Defendant.

Civil Action No. ADC-17-1874

## MEMORANDUM OPINION

On July 7, 2017, Tiesha Holland ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 13 and 16), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 16) are DENIED, the decision of the SSA is REVERSED, and the case is REMANDED to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g).

### PROCEDURAL HISTORY

On February 24, 2014, Plaintiff filed a Title XVI application for SSI alleging disability beginning on November 1, 2012. Her claim was denied initially and upon reconsideration on May 30, 2014 and November 10, 2014, respectively. Subsequently, on January 2, 2015, Plaintiff

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

filed a written request for a hearing and, on June 13, 2016, an Administrative Law Judge ("ALJ") presided over a hearing held in Baltimore, Maryland. On July 20, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [("the Act")] since February 24, 2014, the date the application was filed." ECF No. 10 at 22. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on June 2, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On July 7, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of Plaintiff's disability application. On November 16, 2017, Plaintiff filed a Motion for Summary Judgment, and on February 6, 2018, Defendant filed a Motion for Summary Judgment.[2] This matter is now fully briefed and the Court has reviewed both parties' motions for summary judgement.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We

---

[2] On April 4, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [SSA] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement

4

of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c).

The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of February 24, 2014. ECF No. 10 at 24. At step two, the ALJ found that Plaintiff had the severe impairments of "lumbar radiculopathy, lumbosacral spondylosis without myelopathy, chronic pain syndrome, major depression, bipolar disorder, generalized anxiety disorder, and personality disorder." *Id.* The ALJ also found that Plaintiff had non-severe impairments of right knee pain, osteoarthritis of the knee, and bilateral shoulder pain as well as the non-medically determinable impairment of asthma. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 25. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except [she] can never climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch and crawl. [Plaintiff] can perform simple, routine, repetitive work in an environment with few, if any, workplace changes. [Plaintiff] can tolerate occasional supervision, can work in proximity to co-workers, but not with them, and can have incidental interaction with the public, but no direct customer service. [Plaintiff] would be off-task less than 15% of the day, due to panic attacks she alleged occur 2-3 times a week.

*Id.* at 27. The ALJ then determined that Plaintiff had no past relevant work. *Id.* at 31. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], since February 24, 2014, the date the application was filed." *Id.* at 32.

## DISCUSSION

Plaintiff raises four allegations of error on appeal: (1) that the ALJ improperly failed to consider Listing 12.05C; (2) that the ALJ's RFC determination inadequately accounted for Plaintiff's moderate difficulties with concentration, persistence, and pace; (3) that the ALJ improperly determined Plaintiff's credibility; and (4) that substantial evidence did not support the ALJ's RFC determination. Each of Plaintiff's arguments lacks merit and is addressed below.

### A. The ALJ Did Not Err By Not Expressly Considering Listing 12.05C.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability" (citation omitted)). The burden of proof is on the claimant to show that she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed

impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.*

Here, Plaintiff argues that the ALJ failed to consider her intellectual disorder and insists that the record contains sufficient evidence to support a determination that she met or equaled Listing 12.05C. ECF No. 13-1 at 12–14. The structure of Listing 12.05 for intellectual disability contains an introductory paragraph with diagnostic criteria, which must be satisfied before applying paragraphs A through D. 20 C.F.R. Part 404 Subpart P, App. 1 § 12.00A (2013). The listing reads in pertinent part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404 Subpart P, App. 1 § 12.05C (2013).[3] In other words, a claimant must demonstrate three elements to meet Listing 12.05C: (1) deficits in adaptive functioning manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe impairment. *See Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (per curiam). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources,

---

[3] The SSA revised the listing of impairments for evaluating claims involving mental disorders, which became effective on January 17, 2017.

self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F.App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309, n.3 (2002)).

Here, Plaintiff has not demonstrated—and the record does not show—that she meets all of the requirements of Listing 12.05C. Plaintiff relies primarily on the fact that "[t]he ALJ never mention[ed Plaintiff]'s full-scale IQ score of 67." ECF No. 13-1 at 13. While Plaintiff is correct that the ALJ did not consider Listing 12.05C during her step three analysis, the ALJ did consider several Listings for mental impairments, including Listings 12.04, 12.06, and 12.08. ECF No. 10 at 25–26. During her later analysis, the ALJ mentioned that a psychological consultative examiner "referred to intelligence testing results that were in the extremely low-to-mild range of intellectual disability." ECF No. 10 at 30 (citing Exh. 8F). The ALJ, however, "afford[ed] these results little weight given [Plaintiff]'s untruths noted in the record and statement that she was not in special education classes." *Id.* "[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock*, 667 F.3d at 474. In this case, the ALJ considered the medical evidence, including several psychological evaluations and medical opinions, which contradicted with Plaintiff's adaptive functioning, including her ability to attend to her personal hygiene, shop, interact with family members, attend church, and care for her children, to determine that the IQ score of 67 was invalid. ECF No. 10 at 27–30. Evidence of Plaintiff's actual functioning, plus inconsistencies regarding the psychological consultative examiner's opinions, provide sufficient support for the ALJ's rejection of Plaintiff's IQ score. *Hancock*, 667 F.3d at 475; *see Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[T]est results must be examined to assure consistency with daily activities and behavior.").

Furthermore, regarding the other requirements for Listing 12.05C, the ALJ noted that she "afforded [Plaintiff's attorney] the opportunity to submit school records," but that "after the testimony and noting that [Plaintiff] was not in special education, the attorney declined to get the school records." ECF No. 10 at 22. Having reviewed the record, the Court finds nothing that satisfies the first element of Listing 12.05C. Plaintiff failed to meet her burden to establish that deficits in adaptive functioning manifested before she turned twenty-two and because there is no factual support for Listing 12.05C, the ALJ was not required to compare the medical evidence of record to the criteria of that Listing. *See Huntington*, 101 F.Supp.2d at 391–92. There simply is insufficient evidence that Plaintiff meets *all* of the requirements of Listing 12.05C so as to have merited consideration of that Listing by the ALJ. Thus, the ALJ's conclusions are supported by substantial evidence and her decision to not evaluate § 12.05C does not warrant remand.

**B. The ALJ Erred During Step Four of the Sequential Evaluation.**

The Court will first discuss Plaintiff's two allegations relating to the ALJ's consideration of Plaintiff's moderate difficulty with concentration, persistence, and pace and the ALJ's evaluation of Plaintiff's credibility, and then the Court will proceed to the ALJ's RFC determination, which Plaintiff asserts is also erroneous.

> 1. The ALJ's RFC determination properly accounted for Plaintiff's moderate difficulties with concentration, persistence, and pace.

At step three of the sequential evaluation, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties," and further explained that:

> [t]he examiner in May 2014 described [Plaintiff]'s intellectual resources as "intact," that her memory for recent and remote events was good, and that she was able to spell the word "world" forwards and backwards. However, the examiner noted [Plaintiff]'s report that her concentration was fair, but poor for

> prolonged periods. The examiner in October 2014 indicated that [Plaintiff] only missed one item of recall on her MMSE (mini mental status examination).

ECF No. 10 at 26 (record citations omitted). The ALJ then determined that Plaintiff had the RFC to:

> perform simple, routine, repetitive work in an environment with few, if any, workplace changes. [Plaintiff] can tolerate occasional supervision, can work in proximity to co-workers, but not with them, and can have incidental interaction with the public, but no direct customer service. [Plaintiff] would be off-task less than 15% of the day, due to panic attacks she alleged occur 2-3 times a week.

*Id.* at 27. Plaintiff contends that the ALJ's RFC assessment failed to adequately account for her moderate difficulties in concentration, persistence, or pace in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). ECF No. 13-1 at 14. Defendant counters that the ALJ fully explained the evidence and her reasoning for including the limitations in the RFC and for not including any additional limitations. ECF No. 16-1 at 14. The Court agrees with Defendant.

In *Mascio*, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. Like *Mascio*, the ALJ's RFC determination included a non-exertional restriction to simple, routine, repetitive tasks. ECF No. 10 at 27. However, unlike *Mascio*, the ALJ's RFC assessment in this case also included additional limitations which restricted Plaintiff to "work in an environment with few, if any, workplace changes," occasional supervision, work in proximity to, but not with, coworkers, incidental interaction with the public without direct customer service, as well as "be[ing] off-task less than 15% of the day, due to panic attacks [Plaintiff] alleged occur 2-3 times a week." *Id.*

While a limitation to simple, routine, repetitive tasks alone is insufficient under *Mascio*, courts in this district have uniformly found that further RFC restrictions limiting claimants to work with few changes adequately account for a claimant's moderate limitations in concentration, persistence, and pace. *See, e.g., Lathan v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-444, 2016 WL 1056562, at *3 (D.Md. Mar. 16, 2016) (finding no error where the ALJ restricted the claimant's RFC to non-production work which "should not include productions [sic] standards, judgment changes, and/or *frequent general changes to the routine work environment*" (emphasis added)); *Chase v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-2961, 2016 WL 199410, at *1, 3 (D.Md. Jan. 15, 2016) (finding no error where the ALJ restricted the claimant's RFC to "simple, routine, and repetitive tasks, in a 'low stress' job (defined as requiring no more than occasional decision making and *no more than occasional changes in the work setting*) . . . ; with no interaction with the general public; and with no more than occasional interaction with co-workers" (emphasis added)); *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053 at *3 (D.Md. Nov. 6, 2015) (finding no error where the RFC limited claimant to "a low stress environment, such that there are *few changes in the work setting* and no fast-paced or quota production standards" (emphasis added)).

Here, contrary to Plaintiff's assertions, the ALJ's finding specifically, and appropriately, addressed Plaintiff's ability to stay on task, stating that she "would be off-task less than 15% of the day." ECF No. 10 at 27; *see Fisher v. Colvin*, No. TMD-14-1011, 2015 WL 5287120, at *9 (D.Md. Sept. 9, 2015) (holding that an RFC stating that "due to concentration and focus problems, [the claimant] may be off task 5% of the work day" properly related to the claimant's ability to stay on task and was distinguishable from *Mascio*). The ALJ further accounted for Plaintiff's limitation in concentration, persistence, and pace by restricting her to "work in an

13

environment with few, if any, workplace changes," occasional supervision, work in proximity to, but not with, coworkers, as well as incidental interaction with the public without direct customer service. ECF No. 10 at 27. Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, and pace. Accordingly, remand based on *Mascio* is unwarranted in this case.

    2. The ALJ properly evaluated Plaintiff's credibility.

Plaintiff asserts that the ALJ improperly determined that Plaintiff's symptoms are not to the "degree alleged" and failed to meet the requirements of SSR 16-3p. ECF No. 13-1 at 15–17. Plaintiff's argument is unavailing.

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis v. Berryhill*, 858 F.3d 858, 865–66 (4th Cir. 2017) (internal citations omitted); *see Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). The ALJ must assess the credibility of the claimant's statements, as symptoms can

sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. § 404.1529; *see Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

In the present case, the ALJ appropriately recognized her obligation to properly evaluate the credibility of Plaintiff's testimony with regard to her symptoms and the restrictions caused by

her impairments in accordance with SSR 16-3p. After analyzing the evidence in the record, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record, in accordance with SSR 16-3p, for the reasons explained in this decision." ECF No. 10 at 28.

While the ALJ acknowledged Plaintiff's testimony about the pain symptoms caused by her physical impairments, the ALJ also pointed to several facts which were inconsistent with the Plaintiff's claims of disabling pain. The ALJ referenced Plaintiff's own testimony that she performs a variety of regular, daily activities, including attending to her personal hygiene, shopping, interacting with family members, attending church, and caring for her children, which "indicate[] instances of [Plaintiff]'s malingering and untruthfulness." *Id.* at 27–28. Therefore, the ALJ properly considered the evidence of record and found that the evidence contradicted Plaintiff's subjective claims regarding her impairments and their impact on her ability to work. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Rahe v. Astrue*, 840 F.Supp.2d 1119, 1136 (N.D.Iowa 2011) (finding that substantial evidence in the record of claimant's reported activities supported the ALJ's adverse credibility determination where the claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the

complaints of disabling symptoms and limitations"). Moreover, the ALJ cited to Plaintiff's improvement with treatment and medication, including treatment for her lumbar spine, shoulder, and knee issues and psychotropic medication, and her seeming disinterest in seeking additional treatment, such as an MRI and additional mental health treatment, as evidence that her pain was not as severe as Plaintiff alleged. ECF No. 10 at 28–30; *see Hinton v. Berryhill*, No. MJG-16-4043, 2017 WL 4404441, at *3 (D.Md. Oct. 4, 2017); *see also Mickles*, 29 F.3d at 930 ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). Thus, the ALJ's detailed evaluation of the record evidence against Plaintiff's statements regarding her symptoms amply supports the ALJ's conclusion that Plaintiff's alleged limitations were not entirely credible, and the ALJ properly evaluated Plaintiff's credibility, supporting her findings with substantial evidence.

3. The ALJ improperly assessed Plaintiff's RFC.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degrees to which the individual retains the capacity for sustained performance of the physical—mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(c). Plaintiff argues that the ALJ, in determining Plaintiff's RFC, further failed to explain how she determined that Plaintiff would be off task for "less than 15% of the day, due to panic attacks she alleged occurred 2-3 times a week." ECF No. 13-1 at 18. The Court agrees and remands to allow the ALJ to provide "an accurate and logical bridge" between Plaintiff's limitations in concentration, persistence, or pace and the ALJ's RFC determination. *See White v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-2428, 2017 WL 1373236, at *2 (D.Md. Apr. 13, 2017).

17

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering the ALJ to consider entire record); SSR 96-8p, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). If more than one impairment is present, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [SSA] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Social Security Ruling 96–8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in

the regulations." *Mascio*, 780 F.3d at 636 (footnote omitted) (quoting SSR 96-8p). "Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p).

During her step four evaluation, the ALJ determined that Plaintiff could "perform light work" with the limitations that Plaintiff:

> can never climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch and crawl. [Plaintiff] can perform simple, routine, repetitive work in an environment with few, if any, workplace changes. [Plaintiff] can tolerate occasional supervision, can work in proximity to co-workers, but not with them, and can have incidental interaction with the public, but no direct customer service. [Plaintiff] would be off-task less than 15% of the day, due to panic attacks she alleged occur 2-3 times a week.

ECF No. 10 at 27. The ALJ, however, failed to explain how her factual findings translate into a finding that Plaintiff would be "off-task less than 15% of the day." *Id.* An explanation of how that percentage was calculated is significant, as an increase could preclude competitive employment. *See, e.g., White*, 2017 WL 1373236, at *2. Accordingly, without further explanation, this Court cannot ascertain how the ALJ assessed Plaintiff's difficulties in staying on task, and how those difficulties impacted the RFC assessment. *See id.*; *see also Chandler v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-1408, 2016 WL 750549, at *2 (D.Md. Feb. 24, 2016) (noting that "[i]t is unclear how the ALJ reached that particular conclusion [that the claimant would be off task 5% of the workday], and is also unclear whether being off task only 5% of the workday is consistent with a 'moderate limitation in concentration, persistence or pace.'"); *Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D.Md. Feb. 21, 2017) (remanding to the SSA where the ALJ failed to explain the basis for her conclusion that the claimant would be off-task 10% of the time). In light of this inadequacy, the Court remands the

case to the SSA for further analysis. On remand, the ALJ should consider the impact of Plaintiff's limitations on the RFC determination, and explain the reasons for that finding, citing substantial evidence. In so holding, the Court expresses no opinion regarding whether the ALJ's ultimate conclusion that Plaintiff is not disabled is correct or incorrect.

## CONCLUSION

Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. This case is REMANDED for further proceedings in accordance with this opinion. The clerk is DIRECTED to close this case.

Date: 25 April 2018

A. David Copperthite
United States Magistrate Judge